EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>    Norma I. Concepción Peña | Queja<br><br>2001 TSPR 94<br><br>154 DPR ___ |

Número del Caso: AB-2000-130

Fecha: 20/junio/2001

Oficina del Procurador General:

                          Lcda. Lizette Mejías Avilés
                          Procuradora General Auxiliar

Abogada de la Parte Querellada:
                          Lcda. Noemí Caraballo López

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re

Norma Concepción Peña

AB-2000-130


PER CURIAM


San Juan, Puerto Rico, 20 de junio de 2001


El 7 de septiembre de 2000, el Sr. Ignacio Sánchez Guzmán nos presentó una queja contra la Lcda. Norma I. Concepción Peña (en adelante Lcda. Concepción Peña o querellada) alegando que ésta había incurrido en violación a los Cánones de Ética Profesional. Le remitimos copia del al Procurador General y éste nos sometió su informe el 29 de noviembre de 2000. Con el beneficio del informe del Procurador General y la reacción al mismo de la querellada procedemos a resolver.

I

En el año 1994, el Sr. Sánchez Guzmán (en adelante Sr. Sánchez Guzmán o quejoso) contrató los servicios profesionales de la Lcda. Concepción Peña para que instara una acción judicial contra Caribbean Petroleum Corp. por incumplimiento de contrato y daños y perjuicios. El pacto de honorarios entre abogado y cliente fue uno verbal y contingente, el cliente pagaría a la abogada el 33% de lo que concediera el Tribunal. En la demanda contra Caribbean Petroleum Corp. se solicitó la devolución del precio pagado por la estación de gasolina, $35,000, y $500,000 por daños económicos, merma económica y daños mentales y emocionales.

El Tribunal decidió dividir el caso en dos etapas. En la primera resolvió interlocutoriamente que Caribbean Petroleum Corp. debía efectuar ciertas reparaciones a la estación de gasolina, y en la segunda parte resolvería lo relacionado a los daños por incumplimiento de contrato, daños económicos y daños mentales.

Mientras se estaba dilucidando la parte referente a la concesión de daños en el tribunal de instancia, el Sr. Sánchez Guzmán decidió vender la estación de gasolina. La querellada preparó el correspondiente contrato de compraventa. El precio de venta de la estación de gasolina fue $150,000 de los cuales el Sr. Sánchez Guzmán pagó a la querellada $50,000, o sea, el 33 1/3% del precio total.

En junio de 2000, la querellada le informó al Sr. Sánchez Guzmán que el tribunal de instancia había denegado la reclamación de daños, pero que se podía llevar una apelación para lo cual le cobraría $2,000. Ante tal situación, el quejoso acudió a otro abogado para consultar su caso. Cuando éste le notificó a la querellada, ésta le indicó que le entregaría no sólo ese caso sino todos los expedientes que tenía de otros casos suyos que estaban pendientes.

El día después de esta conversación, el Sr. Sánchez Guzmán acudió a la oficina de la Lcda. Concepción Peña para recoger su expediente, lo cual no fue posible. El próximo día, el quejoso fue nuevamente a buscar sus expedientes. En esta ocasión, la secretaria de la abogada le solicitó que firmara un documento pero, ante la negativa de ésta a entregarle una copia de dicho documento, el quejoso se negó a firmarlo.[1] Procedió entonces a solicitar por escrito la entrega de los expedientes.

El 16 de junio de 2000, la querellada le sometió al quejoso una factura por $1,575 por servicios rendidos en otros casos donde él servía de contacto en un caso de sucesión. Éste pagó dicha factura.

En su contestación a la queja, la querellada alegó que el acuerdo de honorarios consistía en el 33% de "todo lo que yo [la querellada] te consig[a] en el caso". La Lcda.

Concepción Peña alegó que antes de la venta de la estación de gasolina, el quejoso le había preguntado que si ella cobraba de dicha venta, a lo que ella respondió en la afirmativa. La justificación para la remuneración de $50,000 a favor de la abogada radicaba, según ella, en que la remodelación que hizo Caribbean Petroleum Corp. a la estación de gasolina contribuyó al aumento de valor del bien y que esa remodelación se consiguió gracias a las gestiones diligentes de la abogada relacionadas con el caso.

                                        II

Debemos aclarar que no estamos dilucidando una acción de impugnación o cobro de honorarios contingentes o regulares. Este no es el foro apropiado para resolver, en primera instancia, este tipo de acción.[2] Estamos ante una acción disciplinaria en la cual discutiremos los honorarios contingentes y el cobro de honorarios sólo en la medida en que las actuaciones de la Lcda. Concepción Peña puedan haber violentado los Cánones de Ética Profesional, específicamente el Canon 24, 4 L.P.R.A. Ap. IX.

Situaciones como las del caso de autos son las que han motivado el que hayamos calificado de deseable llegar a un acuerdo escrito sobre honorarios de abogado al inicio de la relación profesional entre abogado y cliente. Méndez v. Morales, 142 D.P.R. 26 (1996); Pérez Marrero v. Col. de Cirujanos Dentistas de P.R., 131 D.P.R. 545 (1992). Al iniciar una gestión profesional, todo abogado y abogada debe tener presente el Canon 24 de Ética Profesional, *supra*, ya que éste expresa las normas generales que deben regir en la fijación de honorarios de abogado. En casos como el de autos, donde no era anticipable del todo la extensión de los honorarios, un abogado debe reducir a escrito el acuerdo sobre honorarios, para así evitar confusión y discrepancias con su cliente. Méndez v. Morales, 142 D.P.R. 26, 34-35 (1996).

Además, en casos de pacto de honorarios contingentes, el abogado o abogada tiene el deber de explicar al cliente las consecuencias de este tipo de pacto. Sólo si el cliente así lo desea luego de entender las consecuencias es que deben pactarse los honorarios contingentes, siempre teniendo presente que éstos deben ser beneficiosos para el cliente. Ramírez, Segal & Látimer v. Rojo Rigual, 123 D.P.R. 161 (1989); Pérez Marrero v. Col. de Cirujanos Dentistas de P.R., *supra*; In re Castro Mesa et als, 131 D.P.R. 1037 (1992); Méndez v. Morales, *supra*.

Cuando lo único que existe es la expresión verbal de honorarios ascendentes al 33% de "todo lo que yo [la querellada] te consig[a] en el caso", este acuerdo se interpreta como que el abogado sólo "es compensado si gana el caso y en proporción a la cuantía concedida en la sentencia". Colón v. All Amer. Life & Cas. Co., 110 D.P.R. 772, 776 (1981). En estos

---

[1]    De una parte, la querellada alega que ese documento era solamente uno que certificaba la entrega de expediente. El quejoso, a su vez, alega que el documento constituía un relevo de responsabilidad.

[2]    Nada de lo aquí resuelto prejuzga cualquier acción que cualesquiera de las partes entienda procede con relación a este particular.

casos no es propio que los honorarios del abogado dependan de contingencias ajenas **a su labor dentro del caso.**

El problema medular de índole ético profesional en el caso de autos no se circunscribe a la falta de claridad en los términos del acuerdo de honorarios de abogado, según lo recomienda el Canon 24, *supra*, sino entraña algo más, la separación que existe entre la celebración de la compraventa del bien litigioso y toda ganancia que pudiese generarse en el pleito que fue objeto de honorarios contingentes. Es decir, los honorarios que correspondían a la querellada en la celebración de la compraventa no eran parte de los honorarios contingentes que pactó para llevar el caso. En cuanto a esta transacción, que era ajena al pleito, sólo podía cobrar lo que generalmente cobran los abogados al cerrar una transacción de esta naturaleza.[3] Cabe señalar, además de lo antes reseñado, que la Lcda. Concepción Peña, en violación a lo establecido por la Ley Núm. 9 de 8 de agosto de 1974, 4 L.P.R.A. § 742, le cobró a su cliente el 33 1/3% de lo que entendió era la base de los honorarios contingentes, no el 33% que establece como máximo la Ley, *supra*.[4] Esta Ley expresamente prohíbe el cobro de una cantidad en exceso de lo allí autorizado y le impone a los tribunales el deber de velar por su estricto cumplimiento. Disponiendo expresamente que su violación "será causa para acción disciplinaria ante el Tribunal Supremo" y que "todo contrato o convenio otorgado con el fin de evadir la prohibición... será nulo y no tendrá valor alguno".

En la querella que tenemos ante nuestra consideración y en lo que respecta al caso objeto de honorarios contingentes, el foro de instancia concedió una parte de la reclamación, la reparación de la estación de gasolina, y denegó la otra, los daños y perjuicios. Por lo tanto, en cuanto a ésta última no existían honorarios contingentes. De determinar que bajo las circunstancias de este caso procedía el cobro de honorarios contingentes, los mismos eran por el 33% y sólo sobre la cantidad concedida para reparar la estación de gasolina.

De todo lo antes expuesto surge con meridiana claridad que la Lcda. Concepción Peña violó el Canon 24, *supra*. Sin embargo, como atenuante hay que considerar que la querellada

---

[3] Del expediente surge que la querellada cualificó a la compradora, e hizo los correspondientes contratos de opción a compra y compraventa.

fue diligente en sus gestiones como abogada del Sr. Sánchez Guzmán. Tomando en consideración la conducta de la Lcda. Concepción Peña y los atenuantes antes expresados procedemos a amonestarla y apercibirle que de incurrir en violaciones similares en el futuro, seremos más severos en la imposición de sanciones disciplinarias.

Se dictará la correspondiente sentencia.

---

[4]    Además, la Lcda. Concepción Peña utilizó para el cómputo de los honorarios contingentes no sólo el incremento del valor del inmueble, sino su costo total.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

Norma I. Concepción Peña

AB-2000-130

SENTENCIA

San Juan, Puerto Rico, 20 de junio de 2001

Por todo lo expuesto en la Per Curiam que antecede, la cual es parte integral de la presente, se dicta sentencia amonestando y apercibiendo a la Lcda. Norma I. Concepción Peña que de incurrir en violaciones similares en el futuro, seremos más severos en la imposición de sanciones disciplinarias.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Corrada del Río disiente con opinión escrita. El Juez Asociado señor Fuster Berlingeri no intervino.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

    Norma I. Concepción Peña          AB-2000-130          Queja

Opinión Disidente emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO

San Juan, Puerto Rico, a 20 de junio de 2001.

En el presente caso, una Mayoría de este Tribunal opta por ejercer su jurisdicción disciplinaria para amonestar a la Lic. Norma I. Concepción Peña por violación al Canon 24 de Ética Profesional, 4 L.P.R.A. Ap. IX. Por los fundamentos que expondremos a continuación, disentimos.

I

La queja de epígrafe, realmente envuelve una disputa en cuanto a la razonabilidad de los honorarios que la Lic. Concepción Peña le facturó

al Sr. Ignacio Sánchez Guzmán (en lo sucesivo "el quejoso"). Idóneamente, este asunto debe resolverse amigablemente entre la Lic. Concepción Peña y el quejoso, su cliente. De no ser ello posible, lo procedente es que la querellada presente una acción independiente en cobro de dinero ante el Tribunal de Primera Instancia para que sea dicho foro el que dirima la razonabilidad de los honorarios y, de ser necesario, fije el monto correspondiente.

En *In re Ramírez de Arellano,* 19 D.P.R. 426 (1913) resolvimos que el Tribunal Supremo no es el foro ante el cual pueda ejercitarse una reclamación por honorarios alegadamente excesivos. Además, señalamos en *In re Cepeda Parrilla*, 108 D.P.R. 353 (1979), que el poder disciplinario de este Tribunal no debe utilizarse para convertirnos en una agencia de cobro de las deudas incurridas por los abogados en el curso de sus asuntos personales.[5] Análogamente, tampoco debe utilizarse este poder para atender las reclamaciones entre clientes y abogados con respecto a la razonabilidad de los honorarios facturados. Ello debe atenderse ante el Tribunal de Primera Instancia, mediante una acción independiente.

Por entender que este Tribunal no debe ejercer su jurisdicción disciplinaria en situaciones como ésta, en donde se plantean cuestiones a ser resueltas por el tribunal de instancia, disentimos.

BALTASAR CORRADA DEL RÍO
Juez Asociado

---

[5] Cabe destacar que, en *In re Laboy*, 113 D.P.R. 476 (1982), este Tribunal ejerció su función disciplinaria, a pesar de que tenía ante sí una reclamación de una deuda contraída por el abogado querellado en el curso de sus asuntos personales. En ese caso, optamos por ejercer nuestro poder correctivo por cuanto allí el abogado querellado utilizó –para su propio beneficio– su conocimiento notarial para darle viabilidad a una garantía hipotecaria fútil, en menoscabo de su acreedor. Distinto a lo allí sucedido, en la situación de autos, la controversia se circunscribe a la razonabilidad de los honorarios que la querellada le facturó a su cliente.