

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br><br> Sheila Acevedo Álvarez | 2010 TSPR 74 <br><br> 178 DPR \_\_\_\_ |

Número del Caso: CP-2008-6

Fecha: 20 de abril de 2010

Abogado de la Querellada:

      Lcdo. Ángel Pabón Mediavilla

Oficina del Procurador General:

      Lcda. Edna E. Rodríguez Benítez
      Procuradora General Auxiliar

Materia: Conducta Profesional
     (La suspensión será efectiva el 4 de mayo de 20 10, Fecha en que se le notificó a la abogada de su suspensión Inmediata).

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correccione s del proceso de compilación y publicación oficial de las decisio nes del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Sheila Acevedo Álvarez

CP-2008-6    Conducta
             Profesional

PER CURIAM

San Juan, Puerto Rico, a 20 de abril de 2010.

La licenciada Sheila Acevedo Álvarez, en adelante, licenciada Acevedo Álvarez, fue admitida al ejercicio de la abogacía el 12 de febrero de 1991 y prestó juramento como notario el 1 de mayo de 1992.[1] El 15 de febrero de 2008, el Procurador General presentó una Querella sobre conducta profesional contra la licenciada Acevedo Álvarez a raíz de una Queja instada en su contra. Procedemos a relatar los acontecimientos, según surgen del Informe de la Comisionada Especial y del expediente sobre la gestión profesional de la licenciada

_____

[1] Es preciso señalar que en ocasión anterior, mediante Sentencia dictada el 30 de mayo de 1997, la licenciada Acevedo Álvarez fue suspendida por término de tres (3) meses del ejercicio de la abogacía por infringir los Cánones 12, 18 y 19 de Ética Profesional, *supra*.

Acevedo Álvarez que motivaron se presentara la Queja en su contra.

El 12 de julio de 2002 la licenciada Acevedo Álvarez y la señora Soraya Correa Navarro, en adelante, la quejosa, por sí y en representación de su hija menor de edad Jerelyne Matos Correa, otorgaron un Contrato de Servicios Profesionales para que la primera las representara en un caso sobre daños y perjuicios que éstas incoarían contra el conductor de un automóvil que impactó un auto en que la menor iba como pasajera.

Según el Contrato suscrito, los honorarios que la abogada cobraría serían contingentes a razón de treinta y tres puntos tres por ciento (33.3%) en el caso de la quejosa y veinticinco por ciento (25%) en el caso de la menor, mientras que los gastos serían sufragados por las clientes.

Así las cosas, las partes involucradas en la Demanda suscribieron un Acuerdo Transaccional. A tales efectos, el 2 de abril de 2004 la parte demandada expidió un cheque por la cuantía de setenta mil dólares ($70,000.00) a favor de Jennifer Roque Félix (otra de las demandantes del pleito incoado, quien no es parte de este procedimiento), Jerelyne Matos Correa, Soraya Correa Navarro (la quejosa) y de la licenciada Acevedo Álvarez. A la fecha en que se expidió el cheque, la demandante menor de edad Jerelyne Matos

Correa había advenido a la mayoría de edad por haber sido emancipada por su madre el 9 de marzo de 2004.

Una vez transigido el pleito, la licenciada Acevedo Álvarez cobró a sus dos clientas, la quejosa y su hija, honorarios a razón de treinta y tres punto tres por ciento (33.3%). Alegó que al momento en que se recibió el dinero de la transacción no había menores de edad involucrados y que el uso y costumbre en la profesión era el cobro de dicho por ciento.

En su Queja original, la quejosa impugnó la distribución de la cuantía obtenida en la transacción del caso, así como el cobro de los gastos del pleito. Luego que la licenciada Acevedo Álvarez contestara la Queja en su contra, la quejosa replicó y añadió, como controversia adicional, que se le cobrara el treinta y tres punto tres por ciento (33.3%) de honorarios a la porción correspondiente a su hija menor de edad cuando se había pactado en el Contrato de Servicios Profesionales que sería un veinticinco por ciento (25%). Ello, en contravención a la Ley Núm. 9 de 8 de agosto de 1974, 4 L.P.R.A. sec. 742, que se refiere al cobro de honorarios contingentes de abogados a los menores de edad en casos de daños y perjuicios.

El 30 de diciembre de 2004, la licenciada Acevedo Álvarez contestó la Queja alegando que la quejosa la había contratado a base de honorarios contingentes a razón de

treinta y tres punto tres por ciento (33.3%) y que, **en caso de que hubiesen menores al momento del recobro**, se pactó el veinticinco por ciento (25%). En síntesis, negó que le debiese dinero alguno a la quejosa. El 9 de febrero de 2005 la quejosa replicó la Contestación a la Queja de la licenciada Acevedo Álvarez y se reiteró en que el ordenamiento jurídico establecía que no se podía cobrar más del treinta y tres por ciento (33%).

El 19 de enero de 2005 referimos copia del expediente de la Queja al Procurador General para la investigación e Informe correspondiente, conforme a la Regla 14(d) de nuestro Reglamento. Así las cosas, el 23 de enero de 2007 el Procurador General presentó el correspondiente Informe para someter a la consideración de este Tribunal la conducta incurrida por la licenciada Acevedo Álvarez en su gestión profesional. El 5 de septiembre de 2005 la licenciada Acevedo Álvarez presentó su Réplica al Informe del Procurador General.

Luego de examinar tanto el Informe del Procurador General como la réplica que presentara la licenciada Acevedo Álvarez, el 13 de diciembre de 2007 instruimos al Procurador General a presentar la correspondiente Querella. El 15 de febrero de 2008 el Procurador General presentó Querella sobre conducta profesional contra la licenciada Acevedo Álvarez, imputándole un cargo por violación al Canon 24 de Ética Profesional, 4 L.P.R.A. Ap. IX, y otro

cargo por violación a la Ley Núm. 9 de 8 de agosto de 1974, 4 L.P.R.A. sec. 742.[2]

Mediante Orden del 29 de febrero de 2008, peticionamos a la licenciada Acevedo Álvarez a contestar la Querella incoada en su contra. Finalmente, y luego de varias solicitudes de prórroga, el 5 de mayo de 2008, la licenciada Acevedo Álvarez presentó escrito intitulado Moción en Solicitud de Nombramiento de Comisionado, la cual acogimos como una contestación denegatoria de las alegaciones expuestas en la Querella presentada.

Luego de los trámites de rigor, el 30 de mayo de 2008 designamos a la Hon. Crisanta González Seda, como Comisionada Especial para atender el procedimiento de autos. Tras celebrar una vista evidenciaría, la Comisionada Especial rindió su Informe en el que determinó que, aquilatada la prueba documental y testifical, la licenciada Acevedo Álvarez había incurrido en la conducta imputada.

---

[2] El Procurador General presentó los siguientes cargos:

CARGO I
La licenciada Sheila Acevedo Álvarez infringió el Canon 24 de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 24, al cobrar un 33.3% por concepto de honorarios contingentes en el caso de daños y perjuicios en que representó a la señora Soraya Correa y su hija Jerelyne Matos, quien era menor de edad al momento de radicarse la acción.

CARGO II
La licenciada Sheila Acevedo Álvarez violento las disposiciones de la Ley Núm. 9 de 8 de agosto de 1974, 4 L.P.R.A. sec. 742, al cobrar un 33.3% por concepto de honorarios contingentes a una persona que era menor de edad al momento de otorgar el contrato de servicios profesionales y con quien se pactó que se cobraría un 25% de honorarios contingentes.

Sometido el caso ante nuestra consideración, y contando con el beneficio del Informe de la Comisionada Especial y del Procurador General, así como la contestación de la licenciada Acevedo Álvarez, resolvemos.

I

Reiteradamente hemos señalado que los Cánones de Ética Profesional establecen las normas mínimas de conducta que rigen a los miembros de la profesión legal en el desempeño de su delicada e importante labor. *In re Pujol Thompson,* res. en 19 de junio de 2007, 171 D.P.R.___ (2007), 2007 T.S.P.R. 129, 2007 J.T.S. 136, *In re Izquierdo Stella*, 154 D.P.R. 732 (2001); *In re Matos González*, 149 D.P.R. 817 (1999); *In re Filardi Guzmán*, 144 D.P.R. 710 (1998).

De igual manera, en nuestra jurisdicción, está firmemente establecido que el contrato de servicios legales es un contrato *sui generis* ya que, aunque se trata de un contrato de arrendamiento de servicios al amparo del Artículo 1473 del Código Civil, 31 L.P.R.A. sec. 4111, está regido por las consideraciones éticas relativas a la profesión legal. *In re Delannoy Solé*, res. en 27 de agosto de 2007, 172 D.P.R.__ (2007), 2007 T.S.P.R. 164, 2007 J.T.S. 169; *Nassar Rizek v. Hernández*, 123 D.P.R. 360, 369 (1989); *Méndez v. Morales*, 142 D.P.R. 26, 33 (1996).

En particular, hemos sido consistentes al enfatizar que al iniciar una gestión profesional, todo abogado debe tener presente lo establecido en el Canon 24 de Ética

Profesional, 4 L.P.R.A. Ap. IX C.24, que contiene todas las normas relativas a la fijación de honorarios de abogado. Sobre el particular, dicho Canon estable expresamente que la fijación de honorarios profesionales deberá regirse por el principio de que la profesión es una parte integrante de la administración de la justicia y no un mero negocio con fines de lucro. *In re Díaz Lamoutte*, 106 D.P.R. 450 (1977). Tan es así, que dicho Canon recomienda que el abogado y el futuro cliente lleguen a un acuerdo sobre los honorarios por servicios profesionales al inicio de la relación profesional y que éste sea reducido a escrito. Canon 24 de Ética Profesional, *supra*.

A los fines de las relaciones profesionales entre un abogado y su cliente, se conocen como honorarios contingentes de dicho profesional, el acuerdo entre las partes de que el abogado será compensado si gana el caso y en proporción a la cuantía concedida en la sentencia. *Colón v. All American Life and Casualty Co.*, 110 D.P.R. 772 (1981). A tales efectos, las únicas contingencias que contempla tal definición es que el abogado o abogada gane el caso y que se pacten los honorarios en proporción a una cuantía sobre la cantidad de compensación que se consigne en la Sentencia.

El Canon 24 exige el pago de los honorarios contingentes sólo cuando dichos honorarios sean beneficiosos para su cliente o cuando el cliente lo

prefiera luego de haber sido debidamente advertido de las consecuencias. O sea, en los casos en que se pactan honorarios contingentes el abogado o abogada tiene la obligación de explicar al cliente las consecuencias de este tipo de pacto. Sólo si el cliente así lo desea, luego de entender las consecuencias, es que deben pactarse dichos honorarios. *In re Concepción Peña,* 154 D.P.R. 501 (2001); *Ramírez, Segal & Latimer*, 123 D.P.R. 161, 172 (1989), *In re Castro Mesa et als*, 131 D.P.R. 1037 (1992).

Por su parte, la Ley Núm. 9, *supra*, estableció un límite máximo para los honorarios contingentes en acciones de daños y perjuicios que dispone en lo pertinente:

> [n]ingún abogado cobrará honorarios de naturaleza contingente en acciones de daños y perjuicios una cantidad que, en cualquier concepto, exceda del veinticinco por ciento (25%) del producto final de la sentencia, transacción o convenio si el cliente es menor de edad o incapacitado mental o del treinta y tres por ciento (33%) del producto final de la sentencia, transacción o convenio si se trata de cualquier otro cliente. No obstante, lo anteriormente dispuesto, cuando se trate de clientes que sean menores de edad o incapacitados mentales, el tribunal podrá autorizar el cobro de honorarios contingentes hasta un treinta y tres por ciento (33%) del producto final de la sentencia, transacción o convenio si el abogado así lo solicita y presenta justificación para ello.

Bajo esta disposición, los honorarios contingentes a ser pagados en casos de menores están sujetos a la aprobación del tribunal si el negocio objeto de los servicios es similarmente uno que requiere intervención por parte del Tribunal.

Por otro lado, es norma claramente instituida que el criterio probatorio a utilizarse en procedimientos disciplinarios es el de prueba clara, robusta y convincente, no afectada por reglas de exclusión ni a base de conjeturas. *In re Caratini Alvarado*, 153 D.P.R. 575 (2001). Este criterio requiere una carga probatoria más fuerte que la mera preponderancia de la prueba ya que en estos procesos está en juego el título de un abogado y, por ende, su derecho fundamental a ganarse su sustento. *Id.* Aún cuando no se puede definir de manera precisa, la prueba clara, robusta y convincente ha sido descrita como aquella evidencia que produce en un juzgador de hechos una convicción duradera de que las contenciones fácticas son altamente probables. *In re Ruiz Rivera*, 168 D.P.R. 246 (2006); *In re Rodríguez Mercado*, 165 D.P.R. 630 (2005).

La Regla 14 del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A, establece que le corresponde al Comisionado Especial designado celebrar una vista para recibir la prueba. Por tanto, sus determinaciones fácticas merecen nuestra mayor deferencia. Ahora bien, de igual manera hemos resuelto que, aunque este Tribunal no está obligado a aceptar el Informe del Comisionado Especial nombrado para atender una querella contra un abogado, pudiendo adoptar, modificar o rechazar tal Informe, de ordinario sostenemos las conclusiones de hecho de un Comisionado Especial salvo que se demuestre perjuicio,

parcialidad o error manifiesto. *In re Gordon Menéndez I*, res. el 18 de mayo de 2007, 171 D.P.R.___(2007), 2007 T.S.P.R. 108, 2007 J.T.S. 114; *In re Moreira Avillán*, 147 D.P.R. 78, 86 (1991); *In re Soto López*, 135 D.P.R. 642 (1994); *In re Morales Soto*, 134 D.P.R. 1012 (1994).

Con estos preceptos en mente, atendemos la controversia ante nuestra consideración, no sin antes aclarar que no se está dilucidando una acción de impugnación o cobro de honorarios contingentes o regulares. Lo que nos corresponde atender es una posible violación a la ética profesional en cuanto al cobro de dichos honorarios.

II

Previo a analizar con especificidad los cargos que se le imputan a la licenciada Acevedo Álvarez, veamos algunas de las conclusiones de hechos que surgen del Informe que nos sometiera la Comisionada Especial que completan el cuadro fáctico de este caso.

Surge de las determinaciones de hechos de la Comisionada Especial que la quejosa y la licenciada Acevedo Álvarez suscribieron un acuerdo de servicios legales. Dicho acuerdo se formalizó mediante Contrato escrito intitulado AUTORIZACIÓN Y CONTRATO. Surge del Informe de la Comisionada Especial que el documento aparenta ser un formulario, ya que es similar al de la otra demandante, quien no es parte en este procedimiento, excepto que se le

añadió en la primera línea el nombre de las clientas, y al final, la naturaleza del caso, los honorarios, la fecha en que se suscribió y la firma de la quejosa. Las partes acordaron pactar los honorarios como contingentes. Respecto al aspecto económico, el Contrato dispone que:

> ...[l]os honorarios aquí pactados sólo cubren el pago de abogado propiamente. Los gastos adicionales que motive este contrato, bien para el pago de peritos, costas, para citación de testigos, fianza en el caso de embargos, sellos en el caso de escrituras o representaciones corporativas y/o de cualesquiera otra naturaleza, corren por cuenta de la parte o partes aquí contratantes y serán pagados por separado al momento de producirse la necesidad del desembolso según el sano juicio de la abogada. En el caso en que las abogadas hicieren el desembolso en protección y para beneficio de los intereses del cliente, el mismo será cubierto por éste a requerimiento de aquella.

Al final del Contrato, en el renglón titulado "HONORARIOS" se indicó: "33.3% adulto y 25% menores". Sobre este último extremo, cabe apuntar que, contrario a lo señalado por la licenciada Acevedo Álvarez, en ningún lugar del Contrato se evidencia cláusula alguna que estableciera que, en la eventualidad de que la menor adviniese a la mayoría de edad antes de que finalizara el proceso ante el tribunal, los honorarios serían de treinta y tres punto tres por ciento (33.3%). Tampoco surge que el Contrato se enmendara posteriormente a tales efectos ni que se redactara un nuevo acuerdo con la menor una vez emancipada, dirigido a enmendar los honorarios que se pactaron en el Contrato suscrito con su madre.

Durante el trámite del Caso Civil Núm. FDP2002-0433, *Jennifer Roque Felix, Soraya Correa Navarro, por sí y en representación de la menor Jerelyne Matos Correa*, sobre daños y perjuicios, génesis de la controversia de autos, la licenciada Acevedo Álvarez le informó a la quejosa de la posibilidad de una transacción.  La quejosa preguntó sobre la cantidad que recibirían, siéndole informado por la licenciada Acevedo Álvarez que eso dependería, toda vez que el tribunal retendría el dinero de la menor.  En dicha conversación surgió el tema de  emancipar a la menor.  La quejosa preguntó a la licenciada Acevedo Álvarez sobre el costo de dicho trámite a lo que ésta le contestó, informándole, a su vez, que estaba dispuesta a trabajarlo, mediante el pago de honorarios adicionales.  No obstante, la quejosa acudió a otro abogado quien otorgó el documento de emancipación.  A tales efectos, el 9 de marzo de 2004, se suscribió por la quejosa, la menor y la testigo Ruth E. Ortiz Sánchez una Declaración sobre Emancipación ante el Notario Público, José O. Leduc Cruz.  Mediante dicha Declaración, la quejosa emancipó a su hija y ésta aceptó la emancipación.

Así las cosas, el 25 de marzo de 2004, se presentó en el Caso Civil Núm. FDP2002-0433 documento intitulado Estipulación sobre Transacción.  En el documento se indica que la parte demandante transigió la Demanda por una cantidad de setenta mil dólares ($70,000).  No surge del

documento que la menor demandante hubiera sido emancipada, ni surge el monto de la distribución de dicha cantidad entre cada una de las demandantes.

Previo a que se dictara Sentencia aceptando la Estipulación, el 26 de marzo de 2004, la licenciada Acevedo Álvarez le remitió una factura dirigida a Jerelyne Matos Correa, la menor emancipada, donde le indicó que la suma que le correspondía de la transacción ascendía a cuarenta y cinco mil dólares ($45,000) y que los honorarios a pagar serían el treinta y tres punto tres por ciento (33.3%) de dicha cantidad, a saber, quince mil ciento cincuenta y un dólares con cincuenta centavos ($15,151.50)[3]. Dicha factura fue suscrita por la menor emancipada.

El 30 de marzo de 2004, ante la licenciada Acevedo Álvarez, y mediante el Affidávit Núm. 948, Jerelyne Matos Correa prestó Declaración Jurada[4] mediante la cual autorizó a su madre, a saber, la quejosa, a "endosar por mí y hacer efectivo, cheque que será expedido por MAFRE o PRAICO Insurance Company, como pago de la referida reclamación, la cual fue transigida con mi consentimiento y con el de mi madre en la suma de $45,500.00". Surge de la referida Declaración Jurada que de dicha cantidad le correspondía la suma de tres mil dólares ($3,000) a la quejosa. Asimismo,

---

[3] Además de dicha cantidad se incluyeron los gastos de la tramitación del pleito cifra que ascendió a novecientos setenta y dos dólares ($972.00).

[4] No surge del documento que la licenciada Acevedo Álvarez adhiriera su sello notarial.

del documento se desprende que se autorizó a pagar, *inter alia*, la suma correspondiente a los honorarios de abogado. No surge de la evidencia que obra en autos la razón para descontar la suma de tres mil dólares ($3,000). Tampoco se desprende cambio alguno en el por ciento estipulado correspondiente a los honorarios de abogado.

El 2 de abril de 2004, la compañía *Preferred Risk Insurance Company* emitió el cheque por la cantidad transada a nombre de Jennifer Roque Félix, Jerelyne Matos Correa, Soraya Correa Navarro y la licenciada Acevedo Álvarez.

El 6 de abril de 2004, la quejosa y la licenciada Acevedo Álvarez, entre otras partes, acudieron a una institución bancaria a fin de cambiar el cheque. A tales efectos, el Banco Bilbao Vizcaya Argentaria emitió varios cheques[5], a saber:

1. Cheque Núm. 11600278- por la suma de veintitrés mil ochocientos sesenta y seis dólares con cincuenta centavos ($23,866.50) a nombre de Jerelyne Matos Correa.

2. Cheque Núm. 1170279- por la suma de quince mil ciento cincuenta y nueve dólares con cincuenta centavos ($15,159.50) a nombre de la codemandante Jennifer Roque Félix.

La licenciada Acevedo Álvarez cobró honorarios de abogado a cada parte, incluyendo a la menor emancipada de treinta y tres punto tres por ciento (33.3%).

---

[5] A su vez, la quejosa tomo una cantidad en efectivo no determinada.

En esta etapa cabe apuntar que los eventos narrados fueron efectuados previo a que el Tribunal de Primera Instancia dictara Sentencia aprobando la Estipulación.

El 20 de abril de 2004, el Tribunal de Primera Instancia emitió Sentencia aceptando la estipulación. No surge de dicha Sentencia el hecho de que hay una menor representada por su madre, ni se hace determinación sobre la cantidad de la compensación que le corresponde a la menor y la forma en que se dispondría de ésta, habida cuenta que alegadamente no se le notificó al Tribunal de Primera Instancia de la emancipación, por no obrar evidencia en el expediente.

Evaluados estos hechos, y conforme reseñado, la Comisionada Especial entendió que la licenciada Acevedo Álvarez incurrió en violaciones al Canon 24 y a la Ley Núm. 9, *supra*.

El primer cargo de la Querella, le imputa a la licenciada Acevedo Álvarez, haber actuado contrario al Canon 24, *supra*, al cobrar un treinta y tres por ciento (33.3%) por concepto de honorarios contingentes en el caso de daños y perjuicios en que representó a la quejosa y su hija Jerelyne Matos, quien era menor de edad al momento de presentarse la acción. En cuanto al segundo cargo, se le imputa a la licenciada Acevedo Álvarez haber infringido las disposiciones de la Ley Núm. 9, *supra*, al cobrar un treinta y tres punto tres (33.3%) por concepto de honorarios

contingentes a una persona que era menor de edad al momento de otorgar el Contrato de Servicios Profesionales y con quien se pactó que se cobraría un veinticinco por ciento (25%) de honorarios contingentes.[6]

Sobre los hechos no existe controversia. Sin embargo, es contención de la licenciada Acevedo Álvarez que al momento de cobrar los honorarios en controversia la menor estaba emancipada, lo que a su juicio justificaba que, sin notificación previa, sin enmienda al Contrato, sin solicitarlo al tribunal, aumentara sus honorarios estipulados como dispone la ley, en cuanto a dicha menor de edad.

Fue su contención, que en:

> este caso los honorarios de abogado descansaban en hechos futuros de naturaleza contingente que podrían ocurrir o no, con miras entonces a poder cobrar lo pertinente, dependiendo exclusivamente de que se prevaleciera en el caso, y estando el monto respectivo de las partidas a cobrarse sujeto a transacción o sentencia. Por lo que, según la normativa jurisprudencial prevaleciente en nuestro ordenamiento, es buscando la intención contractual a través de la considerable evidencia extrínseca señalada en el caso antes aludido. En otras palabras, los honorarios contingentes se evalúan y determinan, no al momento de la suscripción del contrato, sino a la fecha de la materialización de las tres circunstancias futuras antes expuestas. Por lo que la función judicial a nivel de instancia es la que tiene en primer lugar la competencia para hacer la determinación correspondiente.

---

[6] Cabe destacar que el Procurador General no presentó cargos en contra de la querellada por haber infringido la Ley Núm. 9, *supra*, al haberle cobrado a la quejosa honorarios en treinta y tres punto tres porciento (33.3%). La Ley Núm. 9, *supra*, según hemos esbozado, prohíbe el cobró de honorarios en exceso al treinta y tres porciento (33%) cuando se trata de un cliente que no es menor de edad ni está incapacitado mentalmente. Véase, *In re Concepción Peña*, *supra*, pág. 506.

Como alegación adicional, señaló que: "…[e]n ausencia de haberse diseñado un protocolo o guías objetivas para determinar cuándo utilizar un mecanismo frente al otro, la ausencia de directrices prospectivas se presta innecesariamente a la utilización de un aparente procesamiento disciplinario selectivo, sobre a quién o no disciplinar, lo que debe evitarse a toda costa".

No podemos avalar esta pretensión de la licenciada Acevedo Álvarez.

En el procedimiento, no hubo controversia alguna sobre el contenido del Contrato de Servicios Profesionales suscrito entre las partes. Allí se dispuso que el pago de honorarios para la abogada sería de treinta y tres punto tres por ciento (33.3%), en cuanto a la quejosa, quien era la clienta adulta, y veinticinco por ciento (25%) por la menor, a quien la quejosa, su madre, representaba en el pleito[7].

A su vez, del Contrato no surge cláusula alguna que incluyera contingencia especial que fuera previsible o situaciones particulares que pudieran presentarse en el

---

[7]  Tampoco existe controversia respecto a que el Contrato dispuso que todo otro gasto que generara el pleito, bien para el pago de peritos, costas, para citación de testigos, fianza en el caso de embargos, sellos en el caso de escrituras o representaciones corporativas y/o de cualesquiera otra naturaleza, se pagarían por la parte contratante, en este caso la quejosa, por separado, al momento de producirse la necesidad del desembolso según el sano juicio de la abogada. Véase, segundo párrafo del Contrato suscrito por la quejosa, el 12 de julio de 2002.

pleito y que pudieran justificar un cambio futuro en los honorarios pactados.

Tampoco se le planteó al Tribunal de Primera Instancia la necesidad de un aumento en los honorarios pactados, como se dispone en la Ley Núm. 9, *supra*, conforme nuestra jurisprudencia.

Interpretar la disposición sobre honorarios que dispone el ordenamiento jurídico como que no aplica cuando el menor adviene a la mayoría de edad, ya sea de forma natural o porque se le emancipe, y que los abogados y abogadas pueden alterar el monto de los honorarios dispuestos por la ley si durante el trámite del caso ocurre alguno de tales eventos, derrotaría el propósito de la ley de proteger a los menores de que se les cobre honorarios excesivos. El trámite de la mayoría de los casos de daños y perjuicios toman más de un año (1) para su solución, término en que el menor podría cumplir la mayoría de edad o podría ser emancipado(a). Es por ello que para aumentar tales honorarios, la ley dispuso que fuera el Tribunal de Primera Instancia el que lo autorice cuando así se solicite y se justifique.[8]

De igual manera, en esta etapa, cabe señalar, que desde el momento en que se otorgó el Contrato de Servicios

---

[8] Dispone que: "No obstante lo anteriormente dispuesto, cuando se trate de clientes que sean menores de edad o incapacitados mentales, el Tribunal podrá autorizar el cobro de honorarios contingentes hasta un treinta y tres (33) por ciento del producto final de la sentencia, transacción o convenio si el abogado así lo solicita y presenta."

Profesionales, en cuanto a la quejosa, se apartó del límite máximo para los honorarios contingentes establecido en la Ley Núm. 9, *supra*. A tales efectos, le cobró a su cliente el treinta y tres punto tres por ciento (33.3%) de lo que entendió era la base de los honorarios contingentes, no el máximo que establece la ley del producto final de la sentencia, transacción o convenio. En el Contrato se acordó que los honorarios serían de un treinta y tres punto tres por ciento (33.3%) para adultos. En cuanto a los honorarios por el caso de la menor, el acuerdo claramente establecía el veinticinco por ciento (25%) de honorarios contingentes.

En conclusión, la Ley Núm. 9, *supra*, expresamente prohíbe el cobro de una cantidad en exceso de lo allí autorizado y le impone a los tribunales el deber de velar por su estricto cumplimiento. Dispone de manera categórica que su violación "será causa para acción disciplinaria ante el Tribunal Supremo" y que "todo contrato o convenio otorgado con el fin de evadir la prohibición... será nulo y no tendrá valor alguno". *In re Concepción Peña, supra*.

Ante lo anterior, y al igual que la Comisionada Especial, somos del criterio que la prueba presentada demuestra claramente que la licenciada Acevedo Álvarez no siguió las normas establecidas en cuanto al cobro de honorarios. En el despliegue de dicha conducta, la

licenciada Acevedo Álvarez incurrió en violaciones al Canon 24 de Ética Profesional, *supra* y a la Ley Núm. 9, *supra.*

III

Por los fundamentos antes expresados, suspendemos a la licenciada Acevedo Álvarez del ejercicio de la abogacía por el término de tres (3) meses a partir de la notificación de la presente Opinión *Per Curiam*.

La licenciada Acevedo Álvarez tiene el deber de notificar a todos sus clientes de su inhabilidad para continuar representándoles y devolverá a éstos los expedientes de los casos pendientes así como los honorarios recibidos por trabajo no realizados. Deberá también informar oportunamente de su suspensión a los foros judiciales y administrativos del país. De igual forma, debe certificar a este Tribunal dentro del término de treinta (30) días el cumplimiento con lo aquí dispuesto.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Sheila Acevedo Álvarez

Conducta
Profesional

CP-2008-6

SENTENCIA

San Juan, Puerto Rico, a 20 de abril de 2010.

Por los fundamentos antes expresados, suspendemos a la licenciada Acevedo Álvarez del ejercicio de la abogacía por el término de tres (3) meses a partir de la notificación de la presente Opinión *Per Curiam*.

La licenciada Acevedo Álvarez tiene el deber de notificar a todos sus clientes de su inhabilidad para continuar representándoles y devolverá a éstos los expedientes de los casos pendientes así como los honorarios recibidos por trabajo no realizados. Deberá también informar oportunamente de su suspensión a los foros

judiciales y administrativos del país.  De igual forma, debe certificar a este Tribunal dentro del término de treinta (30) días el cumplimiento con lo aquí dispuesto.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo.


                              Aida Ileana Oquendo Graulau
                              Secretaria del Tribunal Supremo