Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| MARTÍN GUILLERMO GONZÁLEZ VÉLEZ<br><br>Peticionario<br><br>V.<br><br>PEDRO JUAN FELICIANO VÁZQUEZ<br><br>Recurrido | TA2025CE00627 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Yauco en Sábana Grande<br><br>Caso Núm.:<br>YU2020CV00086<br><br>Sobre:<br>Cobro de Dinero Ordinario |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 24 de noviembre de 2025.

El 16 de octubre de 2025, compareció ante este Tribunal de Apelaciones el señor Martín Guillermo González Vélez (en adelante, licenciado González Vélez o peticionario) por medio de *Certiorari.* Mediante este, nos solicita que revisemos la *Resolución sobre Sentencia Sumaria* emitida el 30 de junio de 2025 y notificada el 1 de julio de 2025, por el Tribunal de Primera Instancia, Sala de Yauco en Sabana Grande. En virtud del aludido dictamen, el foro *a quo* declaró No Ha Lugar, en parte, la *Moción en Cumplimiento de Orden Objeciones a la Prueba Presentada* instada por el peticionario, y ordenó la continuación de los procedimientos sobre esta reclamación por el cobro de $15,000.00 relacionados con la prestación de servicios legales. El 16 de julio de 2025, el peticionario presentó una moción *En Reconsideración.* Mediante *Resolución,* emitida el 15 de septiembre y notificada al día siguiente, el foro primario denegó la moción de reconsideración incoada por el peticionario.

Por los motivos que se exponen a continuación, se deniega la expedición del auto de *Certiorari.*

**I**

El caso ante nuestra consideración comienza con una *Demanda*[1] incoada por el licenciado González Vélez el 13 de marzo de 2020. En su reclamación, el peticionario solicitó la suma de $15,000.00 más interés legal por labores de representación legal. Según la *Demanda*, el peticionario y Pedro Juan Feliciano Vázquez (en adelante, señor Feliciano Vázquez o recurrido) suscribieron un contrato de servicios profesionales el 17 de julio de 2019. El licenciado González Vélez alegó que fungió como representante legal del recurrido en una acción judicial sobre impugnación de paternidad. Puntualizó que, el foro primario dictó sentencia a favor de su cliente, el señor Feliciano Vázquez.[2] Luego de culminado este proceso judicial sobre impugnación de paternidad, el peticionario indicó que le presentó la factura al recurrido por los servicios legales prestados que sumaban $15,000.00. El licenciado González Vélez alegó que la cantidad facturada no ha sido pagada. También indicó que el señor Feliciano Vázquez se ha negado a realizar el pago. Por estos hechos, el licenciado González Vélez le solicitó al Tribunal la imposición de "cargos por mora, intereses, a la referida deuda, así como honorarios por temeridad".[3]

El 9 de julio de 2021, el recurrido presentó su *Contestación a la demanda.*[4] En ella, el señor Feliciano Vázquez aceptó que, en efecto, el contrato de servicios profesionales fue firmado el 17 de

---

[1] Véase, Entrada 1, del expediente digital del caso YU2020CV00086, en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI). *Demanda.*

[2] *Íd.* Según reza la *Demanda*, el identificador alfanumérico del caso de impugnación de paternidad es el PO2019RF00035. También, véase, expediente digital del caso PO2019RF00035, Entrada 28, SUMAC TPI. *Sentencia*, emitida el 26 de octubre de 2019 y notificada el 29 del mismo mes y año.

[3] Véase, Entrada 1, pág. 3, del expediente digital del caso YU2020CV00086, SUMAC TPI. *Demanda.*

[4] Véase, Entrada 10, del expediente digital del caso YU2020CV00086, SUMAC TPI. *Contestación a Demanda.*

julio de 2019. Alegó que sí había realizado pagos. Entre sus Defensas Afirmativas incluyó las siguientes:

[...]

3. El 7 de junio de 2019, el demandado realizó un pago de $10,000.00 dólares, Recibo número 690039, en efectivo en la oficina del demandante.

4. El 2 de agosto de 2019, el demandado realizó un pago de $4,000.00 dólares, Recibo número 690060, en efectivo en la oficina del demandante.

5. En cuanto a un tercer recibo, como pago final se le ha extraviado al demandado pero se afirma que se pagó la totalidad de $15,000.00 dólares.

[...]

8. El demandado pagó la cantidad de $15,000.00 dólares. De un análisis del expediente el demandado trabajó 20 horas a razón de $150.00 dólares la hora por lo que tiene derecho a cobrar $3,000.00 dólares y debe reembolsar al demandado $12,000.00 dólares.

[...]

En ese mismo escrito, el señor Feliciano Vázquez presentó su *Reconvención.*[5] En lo pertinente, alegó lo siguiente:

[...]

2. Para finales del mes de mayo de 2019, el demandado ahora demandado-reconviniente, acudió a las oficinas del Lcdo. Martín González Vélez interesado en contratar sus servicios profesionales para un caso sobre impugnación de paternidad.

3. El día 7 de julio de 2019 el demandado reconviniente realizó un pago de $10,000.00 en efectivo recibo número 690039.

4. Al pago de la referida cantidad, 10 días después, con sólo la firma del Sr. Pedro Feliciano Vázquez se redujo por escrito el acuerdo verbalizado el 7 de julio de 2019, donde se pactó la cantidad de $15,000.00 en honorarios más gastos del litigio.

5. El 2 de agosto de 2019, el demandado realizó un pago de $4,000.00 dólares, Recibo número 690060, en efectivo en la oficina del demandante.

6. Se realizó un pago final de $1,000.00 para completar el pago de $15,000.00 por honorarios.

7. Los costos del litigio fueron asumidos en su totalidad por el demandado reconviniente.

---

[5] *Íd.*

8. El contrato del 17 de julio de 2019, es nulo por ser contrario a la moral, la ley y el orden público.

9. El demandante reconvenido adeuda la cantidad por concepto de devolución de honorarios de abogado de $12,000.00, cantidad vencida, líquida y exigible.

[…]

Por lo anterior, el recurrido solicitó el pago de costas, gastos y honorarios de abogado, en una cantidad no menor de $3,000.00.

También, el 9 de julio de 2021, el recurrido presentó una *Moción de desestimación*.[6] En síntesis, arguyó que el licenciado González Vélez omitió información y no incluyó recibos, ni el contrato, ni la factura final en su reclamación. El recurrido anejó estos documentos en su moción.[7] Sobre la factura y su desglose, detalló lo siguiente:

[…]

8. El demandado en el caso Civil Número PO2019RF00035, acordó $15,000.00 dólares por los servicios y los mismos fueron satisfechos en su totalidad. ***Véase recibos.*** (Énfasis en el original).

9. La factura por los alegados $15,000.00 dólares, adicionales, adeudados y por los cuales la parte demandante, solicita la intervención de este Honorable Tribunal se fundamentan en un análisis detallado hecho por el Lcdo. Martin G. González Vélez sobre un alegado beneficio económico obtenido por el demandado, Pedro Juan Feliciano Vázquez al Tribunal declarar Ha Lugar la demanda sobre Impugnación de Paternidad y haberse comprobrado (sic) que los menores objeto del pleito PO2019RF00035, no son sus hijos.

10. La parte demandante sostiene, en síntesis, que el alegado beneficio económico, de la parte demandada, redunda en la no prestación de alimentos como parte de una pensión alimentaria que hubiese sido fijada de no haber prevalecido en el pleito de Impugnación de Paternidad. ***Véase Factura Final.*** (Énfasis en el original).

11. La parte demandante, establece que al momento de dictarse sentencia el 26 de octubre de 2019 en el caso civil PO2019RF00035; el demandado obtuvo un beneficio económico por los dos menores en el pleito en

---

[6] Véase, Entrada 11, del expediente digital del caso YU2020CV00086, SUMAC TPI. *Moción de desestimación*, presentada por el recurrido el 9 de julio de 2021.
[7] *Íd.*, Anejos denominados como: "Recibos", "Factura Final", "Contrato".

las siguientes cantidades: Por el menor P.A. $25,000.00 y por el menor DS $64,400.00. Cálculos especulativos que se desconocen las guías usadas para aplicar dichas cantidades.

12. La factura final establece un alegado beneficio total ascendente a $89,600.00 dólares, solo en pensión alimentaria básica, no calculó los gastos suplementarios. Sin embargo, en consideración al cumplimento del demandado se le aplicó un 33% al alegado beneficio económico para una cantidad de $29,560.00, pero ante el cumplimento del cliente se le da un descuento por $14,560.00 quedando un balance de $15,000.00 como honorarios finales.

13. A la fecha en que el demandante presenta la demanda en cobro de dinero contra el demandado, el demandado argumenta que no adeuda cantidad de dinero alguna al demandante y por el contrario es el demandante quien tiene que reembolsarle una cuantía no menor de $12,000.00 dólares por ser el contrato uno nulo, contrario a la ley, la moral y el orden público y aplica la doctrina de quantum meruit.

[…]

El 12 de julio de 2021, notificada el 16 del mismo mes y año, el foro primario emitió su *Resolución.*[8] En ella, declaró como estipulado que el recurrido pagó la cantidad de $15,000.00 al peticionario y que quedaba por dilucidar lo relativo a la factura en controversia.

El 30 de julio de 2021, el licenciado González Vélez presentó su *Réplica a Reconvención.*[9] El peticionario alegó que, en el mes de abril de 2019, la señora madre del recurrido acudió a la oficina del licenciado González Vélez en busca de ayuda legal para su hijo. Ella había sido cliente del licenciado González Vélez en el pasado. Le relató que su hijo atravesaba unos problemas con su expareja. Las situaciones legales incluían un caso pendiente en el Departamento de la Familia y una orden de protección que había intentado en contra de su expareja y madre de los menores, en ese entonces, reconocidos como hijos del señor Feliciano Vázquez. También,

---

[8] Véase, Entrada 14, del expediente digital del caso YU2020CV00086, SUMAC TPI.
[9] Véase, expediente digital del caso YU2020CV00086, Entrada 16, SUMAC TPI. *Réplica a reconvención,* presentada por el peticionario el 30 de julio de 2021.

existían reclamaciones sobre bienes muebles e inmuebles. El recurrido le expresó al licenciado González Vélez que contaba con representación legal para un asunto sobre una orden de protección que se presentó en su contra y que no estaba de acuerdo con dicha representación legal. También, la madre del recurrido le manifestó al licenciado González Vélez que ella no creía que el hijo mayor del recurrido fuera de él y que le habían dicho que no se podía hacer nada. También, el recurrido le manifestó al licenciado González Vélez que le estaban pidiendo una pensión de alimentos. Así las cosas, el licenciado González Vélez le indicó que no podía asumir su representación legal, pues el recurrido ya contaba con otro abogado.

Posteriormente, el recurrido y su señora madre regresaron a la oficina del peticionario con los expedientes de la representación legal previa y le indicaron al licenciado González Vélez que habían solicitado la renuncia del otro abogado. Entonces, el peticionario comenzó a prestar su consejo legal.

Como documentos adicionales, el peticionario anejó copia del contrato que firmó el recurrido y copia de la factura final que firmó el peticionario.[10]

Sobre el contrato y la cantidad reconvenida por el recurrido, el peticionario expresó lo siguiente:

> [...]
>
> 8. De la aseveración número **Ocho** de la Reconvención, a pesar de ser una cuestión de Derecho, que no requiere una respuesta, se niega tal y como está redactada.
>
> **9.** Se niega la aseveración número **Nueve** de la Reconvención, por no ser cierta. Se asevera afirmativamente que las partes acordaron y firmaron un contrato. Su naturaleza y razón constan claras y/o expresas en el mismo y no requieren interpretación adicional.
>
> [...]

---

[10] *Íd.*, Anejos denominados como: "Copia contrato que acompaña demandado", "Factura Final del demandado su copia".

El 12 de julio de 2021, mediante *Minuta* transcrita el 15 de julio de 2021, el foro primario ordenó que las partes completaran el descubrimiento de prueba y las mociones quedaron en suspenso hasta finalizado ese proceso.[11]

El 8 de agosto de 2021, notificada el 18 del mismo mes y año, mediante *Resolución*,[12] el foro *a quo* autorizó el término final de sesenta (60) días para la realización del descubrimiento de prueba. Además, decretó lo siguiente:

> [...] EXISTIENDO CONTROVERSIAS SUSTANCIALES ESTE CASO DEBER[Á] VERSE EN JUICIO Y ES LA RAZ[Ó]N POR LO QUE NO ES UN COBRO NORMAL POR REGLA 60 Y POR LO QUE EL TRIBUNAL LO CATALOGA ORDINARIO. [...]

El 30 de abril de 2024, las partes presentaron el *Informe enmendado de conferencia preliminar entre abogados*.[13]

El 13 de mayo de 2024, el señor Feliciano Vázquez presentó una *Moción Informativa sobre prueba estipulada en informe preliminar entre abogados*.[14] Indicó que acompañó prueba documental estipulada e incluyó, entre otras cosas, copia del contrato con fecha del 17 de julio de 2019, recibos de pago y la factura final en controversia con fecha del 23 de diciembre de 2019.

El 14 de mayo de 2024, el foro primario celebró una Vista de forma remota como parte de los procedimientos con antelación al juicio. En su *Minuta*,[15] el foro *a quo* extendió como fecha final el 4 de junio de 2024 para que las partes pudieran documentar por escrito sus objeciones a la prueba presentada.

El 17 de mayo de 2024, el señor Feliciano Vázquez presentó una *Moción en Cumplimiento de Orden Objeciones a la Prueba Presentada por la parte demandante*.[16] El recurrido objetó prueba

---

[11] Véase, expediente digital del caso YU2020CV00086, Entrada 17, SUMAC TPI.
[12] Véase, expediente digital del caso YU2020CV00086, Entrada 25, SUMAC TPI.
[13] Véase, expediente digital del caso YU2020CV00086, Entrada 90, SUMAC TPI.
[14] Véase, expediente digital del caso YU2020CV00086, Entrada 92, SUMAC TPI.
[15] Véase, expediente digital del caso YU2020CV00086, Entrada 96, SUMAC TPI.
[16] Véase, expediente digital del caso YU2020CV00086, Entrada 94, SUMAC TPI.

documental ofrecida por el demandante. En lo pertinente a la factura final en controversia, arguyó lo siguiente:

> [...]
>
> 30. Factura final - Factura del 23 de diciembre de 2019, luego de haber sido discutida ampliamente con el cliente y aceptado su pago por éste.
>
> **<u>Se objeta, esta es una conclusión errónea a la que llega el demandante, por la cual instó la causa de acción. Causa de acción que no justifica la concesión de un remedio.</u>** (Subrayado y negrillas en el original).
>
> [...]

El 22 de mayo de 2024, el licenciado González Vélez presentó su *Moción en cumplimiento de orden y en réplica a otra*.[17] El peticionario anejó copia del contrato con fecha del 17 de julio de 2019 y firmado por ambas partes. También, incluyó documentos sobre los casos de alimentos y órdenes de protección relacionados con el recurrido y su expareja.

Transcurridas varias incidencias procesales, el 11 de junio de 2024, se celebró la *Vista en su fondo*. Mediante *Minuta*,[18] el foro *a quo* señaló el juicio para los días 6 y 13 de septiembre de 2024.

El 11 de julio de 2024, el recurrido incoó una *Solicitud de Sentencia Sumaria*.[19] Como controversia, presentó lo siguiente:

### ASUNTOS LITIGIOSOS O EN CONTROVERSIA

> Determinar que como cuestión de derecho si procede el cobro de honorarios de abogado por la cantidad de $15,000.00 basado en una factura final de una reclamación de alimentos futuros inexistente y si esa reclamación es nula por transgredir el canon 24 de ética profesional.

El 23 de agosto de 2024, el peticionario presentó su *Oposición a solicitud de sentencia sumaria*.[20] En esencia, negó que en el contrato suscrito por las partes se pactaran honorarios por

---

[17] Véase, expediente digital del caso YU2020CV00086, Entrada 95, SUMAC TPI.
[18] Véase, expediente digital del caso YU2020CV00086, Entrada 101, SUMAC TPI. *Minuta* de la vista en su fondo celebrada el 11 de junio de 2024, transcrita el día 18 del mismo mes y año.
[19] Véase, expediente digital del caso YU2020CV00086, Entrada 102, SUMAC TPI.
[20] Véase, expediente digital del caso YU2020CV00086, Entrada 107, SUMAC TPI.

alimentos futuros.[21] Explicó que el pago de honorarios se pactó mediante una fórmula mixta.

El 12 de septiembre de 2024, el foro primario, mediante *Orden*,[22] convirtió la causa de acción a cobro de dinero ordinario en virtud de una *Resolución* anterior.[23]

Luego de varios trámites procesales, el 13 de diciembre de 2024, notificada el mismo día, mediante *Orden sobre Sentencia Sumaria y Señalamientos*,[24] el foro primario confirmó que no resolvería en forma sumaria. En consecuencia, señaló la Vista en su fondo para los días 7 y 14 de marzo de 2025.

El 30 de junio de 2025, notificada al día siguiente, el foro primario emitió una *Resolución sobre Sentencia Sumaria.*[25] El foro *a quo* ordenó lo siguiente al peticionario:

> **En este caso, la parte demandante debe presentar prueba de las gestiones profesionales realizadas, tiempo dedicado y sobre el valor razonable de las horas trabajadas, que reclama no le fueron compensadas por el cliente, el aquí demandado, Sr. Pedro Juan Feliciano Vázquez. De la misma forma debemos proceder, cuando se ventilen las alegaciones de la Reconvención.** [Énfasis nuestro].[26]

En lo relacionado con el contrato y la cantidad de $15,000.00, el Tribunal de Primera Instancia, declaró lo siguiente:

[…]

III. **Hechos sobre los cuales no existe controversia**

[…]

3. El Lcdo. Martín Guillermo González Vélez y el Sr. Pedro Juan Feliciano Vázquez suscribieron un contrato de servicios profesionales el 17 de julio de 2019.

4. El Lcdo. Martín Guillermo González Vélez aceptó haber recibido la cantidad de $15,000.00 en

---

[21] El peticionario hizo referencia al contrato original que localizó en la Entrada 95, Anejo 10 del expediente digital del caso YU2020CV00086. El contrato aparece firmado por el peticionario y el recurrido el 17 de julio de 2019.
[22] Véase, expediente digital del caso YU2020CV00086, Entrada 112, SUMAC TPI.
[23] Véase, expediente digital del caso YU2020CV00086, Entrada 25, SUMAC TPI.
[24] Véase, expediente digital del caso YU2020CV00086, Entrada 121, SUMAC TPI.
[25] Véase, expediente digital del caso YU2020CV00086, Entrada 126, SUMAC TPI.
[26] *Íd.*, pág. 8

concepto de honorarios de abogado del demandado, Pedro Juan Feliciano Vázquez.
[...]

A la luz de lo anterior, este Tribunal concluye que subsiste la necesidad de dilucidar hechos sobre las siguientes **Controversias**, lo que amerita que este Tribunal ordene la celebración del juicio plenario:

1. Luego de que las partes estipularan el contrato de honorarios profesionales, procede determinar, si procede o no el cobro de la factura remitida por el Lcdo. Martín González Vázquez, por la suma de $15,000.00 adicionales, sobre los $15,000.00 previos, que aceptó haber recibido el demandante del Sr. Pedro Juan Feliciano Vázquez. Se debe interpretar la fórmula mixta para la compensación de honorarios planteada por la parte demandante.

2. Qué servicios legales solicitó el demandado al abogado demandante y cuáles se pactaron para la representación legal.

3. Si el abogado demandante fue o no compensado y si lo fue en exceso a la labor profesional trabajada para el demandado. De ser así, si procede la devolución de alguna partida en honorarios devengada, como reclama el demandado en la Reconvención.

4. Cumplimiento de los Cánones de Ética profesional, en lo relacionado a esta controversia sobre el cobro de honorarios, por el Lcdo. Martín Guillermo González Vélez. 5. Si alguno de los litigantes ha obrado con temeridad.

Por lo anterior, el foro primario declaró No Ha Lugar la *Moción de Sentencia Sumaria* presentada por el recurrido y No Ha Lugar, en parte, la *Moción en Cumplimiento de Orden Objeciones a la Prueba Presentada por la parte demandante*. Las mociones denegadas fueron presentadas por el recurrido.

El 16 de julio de 2025, el peticionario presentó su *Reconsideración*.[27] Solicitó que se reconsiderara en parte la determinación. Insistió en que la doctrina *quantum meruit* no es aplicable en este caso por existir un contrato escrito entre las partes.

---

[27] Véase, expediente digital del caso YU2020CV00086, Entrada 129, SUMAC TPI.

El 15 de septiembre de 2025, notificada al día siguiente, el foro primario emitió su *Resolución*.[28] El foro *a quo* sostuvo su dictamen original y denegó la moción de reconsideración.

El 16 de octubre de 2025, el peticionario presentó ante este foro revisor el recurso de *certiorari* que nos ocupa.[29] En su recurso, esgrimió los siguientes señalamientos de error:

PRIMER ERROR

ABUSÓ DE SU DISCRE[CIÓ]N EL TPI AL DICTAR LA RESOLUCI[Ó]N RECURRIDA, INTRODUCIENDO EN DICHA RESOLUCI[Ó]N ASUNTOS QUE -HABIAN SIDO RESUELTOS DE FORMA DIFERENTE POR EL PROPIO TPI, AVALANDO CONTRADICTORIAMENTE LA TEOR[Í]A ELUCUBRADA POR EL DEMANDADO QUE LE HABÍA SIDO RESUELTA EN SU CONTRA.

SEGUNDO ERROR

COMETI[Ó] CRASO ERROR DE DERECHO AL NO DECIDIR CONFORME A LA PRUEBA PRESENTADA ANTE EL TPI, LO QUE CONSTITUYE UN ABUSO DE DISCRE[CIÓ]N.

TERCER ERROR

ERR[Ó] COMO CUESTI[Ó]N DE DERECHO EL TPI AL INDICAR QUE EN ESTE CASO PROCEDE LA DOCTRINA DEL *QUANTUM MERIUT*, HABIENDO UN CONTRATO V[Á]LIDO ENTRE LAS PARTES.

CUARTO ERROR

ERR[Ó] COMO CUESTIÓN DE DERECHO EL TPI AL DICTAMINAR QUE EN ESTE CASO EXISTE UNA FALTA DE CONCRECI[Ó]N SOBRE LO QUE CONSTITUYE UN BENEFICIO ECON[Ó]MICO.

Examinada la *Petición de Certiorari*, el 30 de octubre de 2025, esta *Curia* emitió y notificó una *Resolución*. Otorgó hasta el 27 de octubre de 2025 a la parte recurrida para expresarse.[30]

El 22 de octubre de 2025, la parte recurrida presentó su *Moción solicitando prórroga*. Solicitó veinte (20) días para presentar su oposición.[31]

---

[28] Véase, expediente digital del caso YU2020CV00086, Entrada 136, SUMAC TPI.
[29] Véase, expediente digital del caso TA2025CE00627, Entrada 1, en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA).
[30] *Íd.*, Entrada 2.
[31] *Íd.*, Entrada 3.

El 23 de octubre de 2025, este tribunal apelativo intermedio concedió a la parte recurrida hasta el 6 de noviembre de 2025, como fecha final e improrrogable, para exponer su posición en torno al recurso de epígrafe.[32]

Luego de varios trámites procesales, el 31 de octubre de 2025, la parte recurrida presentó ante este foro revisor la *Oposición a la Expedición del Auto de Certiorari.*[33]

Con el beneficio de la comparecencia de las partes, procedemos a disponer del recurso ante nuestra consideración.

**II**

### A. *El Certiorari*

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020)[34]. Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025)., dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008); *Pueblo v. Rivera Montalvo*, supra, pág. 372; *Torres González v. Zaragoza Meléndez*, supra, pág. 848. La precitada Regla dispone lo siguiente:

---

[32] *Íd.*, Entrada 4.
[33] *Íd.*, Entrada 7.
[34] Véase también *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 335-336 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

Por otro lado, a partir del 1 de julio de 2010, se realizó un cambio respecto a la jurisdicción del Tribunal Apelativo para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia mediante recurso de *certiorari*. A tal fin, la Regla 52.1 de

Procedimiento Civil, 32 LPRA Ap. V. R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> [. . .]

Según se desprende de la precitada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pueblo v. Díaz de León*, supra, pág. 918, en referencia a *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con

prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial*". Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992*); Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

### B. Contratación de Servicios Legales

Los contratos son negocios jurídicos bilaterales y, en nuestro ordenamiento, constituyen una de las varias formas en que las personas pueden obligarse entre sí. *Amador Parrilla v. Concilio Iglesia Universal de Jesucristo,* 150 DPR 571, 581 (2001) que cita a *Santiago Nieves v. ACAA,* 119 DPR 711 (1987). Los acuerdos que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse al tenor de los mismos. Artículo 1044, Código Civil de Puerto Rico, 31 LPRA ant. sec. 2994.[35] Los contratos son obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez. Artículo 1230, *supra,* 31 LPRA ant. sec. 3451. Por ende, los contratos verbales tienen tanta eficacia como los escritos. *Vila & Hnos., Inc. v. Owens Ill. de P.R.,* 117 DPR 825 (1986). Así pues, el contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa o prestar algún servicio. Artículo 1206, *supra,* 31 LPRA ant. sec. 3371. En Puerto Rico, impera el principio de la libertad de contratación, siempre y cuando, los acuerdos no sean contrarios a las leyes, a la moral o al orden público. Artículo 1207, *supra,* 31 LPRA ant. sec. 3372.

Ahora bien, sea verbal o escrito,[36] el tipo de contratación entre un abogado y su cliente es uno de arrendamiento de servicios *sui*

---

[35] Hacemos referencia al derogado Código Civil de 1930, por sus disposiciones ser aplicables a la fecha de los hechos.
[36] Aun cuando se recomiende que el contrato entre un abogado y su cliente conste por escrito, los acuerdos verbales entre éstos, son válidos. *In re Concepción Peña,*

*generis*, pues está supeditado a múltiples consideraciones éticas, inherentes a la profesión legal. *Blanco Matos v. Colón Mulero,* 200 DPR 398, 408-409 (2018), que cita con aprobación a *In re Acevedo Álvarez,* 178 DPR 685, 690 (2010); *In re Delannoy Solé,* 172 DPR 95, 101-102 (2007).

Uno de los aspectos sobre los que directamente recaen las referidas consideraciones éticas son los honorarios de abogado, regulados por el Canon 24 de los de Ética Profesional que, en lo pertinente, establece lo siguiente:

> La fijación de honorarios profesionales debe regirse siempre por el principio de que nuestra profesión es una parte integrante de la administración de la justicia y no un mero negocio con fines de lucro. Al fijar el valor de los honorarios, deben considerarse los siguientes factores: (1) el tiempo y trabajo requeridos, la novedad y dificultad de las cuestiones envueltas y la habilidad que requiere conducir propiamente el caso; (2) si el aceptar la representación del caso en cuestión ha de impedir al abogado que se haga cargo de otros casos que probablemente han de surgir del mismo asunto, y en los cuales existe una razonable expectativa de que de lo contrario sus servicios serán solicitados o que tal representación implique la pérdida de otros asuntos extraños al caso en cuestión o el antagonismo con otros clientes; (3) los honorarios que acostumbradamente se cobran en el distrito judicial por servicios similares; (4) la cuantía envuelta en el litigio y los beneficios que ha de derivar el cliente de los servicios del abogado; (5) la contingencia o certeza de la compensación; y (6) la naturaleza de la gestión profesional, si es puramente casual o para un cliente constante.
>
> Es deseable que se llegue a un acuerdo sobre los honorarios a ser cobrados por el abogado al inicio de la relación profesional y que dicho acuerdo sea reducido a escrito.
>
> El abogado no debe estimar sus consejos y servicios en más ni en menos de lo que realmente valen. Al aceptar la representación profesional de un cliente debe considerar que le debe a éste un máximo de esfuerzo profesional en la medida de su talento y preparación. No debe aceptar retribuciones mínimas con la idea preconcebida de rendir esfuerzos mínimos.
>
> [...]
>
> Un abogado debe exigir el pago de honorarios contingentes sólo en aquellas ocasiones en que dichos

---

154 DPR 501, 504-505 (2001). Véase además *Ramírez, Segal & Látimer v. Rojo Rigual,* 123 DPR 161, 172 (1989).

honorarios sean beneficiosos para su cliente, o cuando el cliente lo prefiera así después de haber sido debidamente advertido de las consecuencias.

Con el propósito de que los clientes estén protegidos contra cargos injustos, los honorarios contingentes deben ser razonables y estar siempre sujetos a la aprobación del tribunal, en aquellos casos en que la intervención judicial sea requerida por ley o por alguna de las partes en el litigio. [...]

El abogado debe acatar los deseos de un cliente ansioso de transigir su pleito.

[...]

4 LPRA Ap. IX, C. 24.

Por otro lado, el Canon 25 de Ética Profesional, 4 LPRA Ap. IX C. 25, dispone que las controversias de los abogados con sus clientes, con respecto a la compensación por su trabajo, deben evitarse por el abogado en todo lo que sea compatible con el respeto a sí mismo y con el derecho que tenga a recibir una compensación razonable por los servicios prestados. *In re Meléndez Figueroa*, 166 DPR 199, 208 (2005). Por otro lado, el abogado tiene derecho a recibir una compensación razonable por los servicios que rinde a sus clientes. *Pérez v. Col. Cirujanos Dentistas de PR*, 131 DPR 545, 558 (1992); *Colón v. All Amer. Life & Cas. Co.*, 110 DPR 772, 774 (1981), *Rodríguez v. Ward*, 74 DPR 880 (1953). En específico, en *Nassar Rizek v. Hernández*, 123 DPR 360, 373 (1989), el Tribunal Supremo de Puerto Rico dijo entonces que, "[l]o expuesto tiene como contraparte el derecho del abogado a recibir como profesional una compensación razonable por sus servicios... Como corolario, el abogado está facultado a entablar aquellas reclamaciones judiciales necesarias para el cobro de sus honorarios, aunque cautelarmente, el mismo canon señala que "debe evitarse", a no ser que se presenten únicamente para impedir injusticias, imposiciones o fraude". *Colón v. All Amer. Life & Cas. Co.*, supra, pág. 774; *In re Santos Vías*, 122 DPR 881 (1988). También, véase, *In re Vélez Lugo*, 180 DPR 987,

996 (2011) que cita a *In re Merced Montañez,* 164 DPR 678, (2005); *Pérez v. Col. Cirujanos Dentistas de PR*, supra.

Si existe un pacto de honorarios entre un abogado y un cliente que cumpla con los rigores éticos, aplica el principio de *pacta sunt servanda*. En el caso que el acuerdo para la prestación de servicios legales sea a base de honorarios contingentes, el Tribunal Supremo de Puerto Rico ha expresado que "el abogado que acepta ser remunerado a base de honorarios contingentes es compensado si gana el caso, si acontece alguna de las contingencias pactadas y en proporción a la cuantía adjudicada por el tribunal". Esto es, independientemente del tiempo y esfuerzo que haya dedicado, este tipo de acuerdo sujeta el pago de honorarios a la suerte del proceso. *Blanco Matos v. Colón Mulero*, supra, pág. 409, que cita a *Pérez v. Col. Cirujanos Dentistas de PR*, supra.

De otro lado, el Artículo 1473 del derogado Código Civil de Puerto Rico de 1930, aplicable al caso de autos, reconoce el derecho a reclamar el valor razonable de los servicios prestados, incluyendo los legales, a base de un *quantum meruit* ("tanto como se merece"[37]). Reza la disposición civil:

> Pueden arrendarse los servicios de criados y trabajadores sin tiempo fijo o por cierto tiempo. El arrendamiento hecho por toda la vida es nulo. En cuanto a los servicios profesionales, se estará, para la remuneración de los mismos, a lo convenido entre las partes; cuando no hubiere convenio y surgieren diferencias, la parte con derecho a la remuneración podrá reclamar y obtener en juicio de la otra parte, ante cualquier corte de jurisdicción competente, el importe razonable de dichos servicios.

31 LPRA ant. sec. 4111.

El precepto anterior "provee un remedio en restitución basado en elementos de justicia". *Cruz Pérez v. Roldán Rodríguez et al.*, 206 DPR 261, 272 (2021), que cita a *Blanco Matos v. Colón Mulero*, supra,

---

[37] Véase, *Cruz Pérez v. Roldán Rodríguez*, 206 DPR 261, 271 (2021), que cita a I. Rivera García, *Diccionario de Términos* Jurídicos, 3ra. ed. rev., San Juan, Ed. Lexis 2000, pág. 395).

pág. 413. De esta manera, se aspira evitar el empobrecimiento del abogado que presta diligente y éticamente sus servicios legales y el enriquecimiento injusto de quien los recibe. Por lo general, un abogado puede reclamar sus honorarios por los servicios prestados a base de un *quantum meruit* cuando no los haya pactado por contrato. *Id.* Además, se ha resuelto que, de no ser posible la valoración de honorarios por el contrato de contingencia, los tribunales deben estimar la compensación a base del *quantum meruit. Colón v. All Amer. Life & Cas. Co.*, supra, pág. 777.

Recientemente, nuestro Máximo Foro resumió algunas instancias en que los honorarios de abogado podrán ser determinados a base de un *quantum meruit.* Éstas son: (1) que el contrato haya sido invalidado por alguna irregularidad en su ejecución; o (2) el abogado haya sido prematuramente destituido por su cliente; o (3) por instrucciones del cliente, se haya desistido voluntariamente del pleito; o (4) el abogado que "renuncia voluntariamente a la representación legal de su cliente, antes de culminar la gestión profesional para la cual fue contratado y por la cual pretendía cobrar honorarios contingentes, tiene derecho a ser compensado por sus servicios a base de un *quantum meruit* siempre y cuando demuestre que hubo justa causa para la renuncia".[38] En todos estos casos, el abogado reclamante tiene el peso de la prueba. De prevalecer, al determinar la cuantía a pagar, el tribunal debe considerar lo siguiente: "(1) las gestiones profesionales que alegadamente realizó a beneficio de su cliente; (2) las horas o fracción de tiempo que le dedicó a cada una de dichas gestiones y (3) el valor razonable de las horas dedicadas". *Cruz Pérez v. Roldán*

---

[38] *Cruz Pérez v. Roldán Rodríguez et al.*, supra, págs. 272-273 que cita a *Berkan et al. v. Mead Johnson Nutrition*, 204 DPR 183, 216-217 (2020); *Blanco Matos v. Colón Mulero*, supra, pág. 416.

*Rodríguez et al.,* supra, pág. 272, que cita a *Colón v. All Amer. Life & Cas. Co.*, supra.

## III

El peticionario nos solicita que revisemos la *Resolución* emitida por el Tribunal de Primera Instancia, en la que ordenó al peticionario "[...]presentar prueba sobre las gestiones profesionales realizadas, tiempo dedicado y sobre el valor razonable de las horas trabajadas [...]" en relación con los servicios legales extendidos al recurrido.[39]

En su primer señalamiento de error, el licenciado González Vélez arguyó que el foro *a quo* incurrió en abuso de discreción al acoger en su *Resolución* asuntos que habían sido resueltos de manera diferente por el mismo foro.

En su segundo señalamiento de error, el peticionario señaló como error de derecho, que el foro primario no decidió conforme a la prueba presentada ante sí, por lo que le imputó nuevamente abuso de discreción.

En su tercer señalamiento de error, el peticionario planteó como error de derecho, la aplicación del foro primario de la doctrina *quantum meruit,* habiendo un contrato entre partes.

En su cuarto señalamiento de error, el peticionario imputó falta de concreción sobre lo que constituye un beneficio económico.

Como tribunal apelativo, en primer lugar, estamos obligados a examinar si tenemos jurisdicción para atender el recurso presentado, entiéndase, debemos determinar en primera instancia, si el promovente del recurso ha planteado un asunto comprendido en alguna de las excepciones de la Regla 52.1, *supra,* o la Regla 40 del Tribunal de Apelaciones, *supra.* Veamos.

---

[39] Véase, expediente digital del caso YU2020CV00086, Entrada 126, pág. 8, SUMAC TPI. *Resolución sobre Sentencia Sumaria,* emitida el 30 de junio de 2025 y notificada al día siguiente.

La Regla 52.1, *supra,* autoriza la intervención de un tribunal revisor cuando ante sí se presentan asuntos relacionados con la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

Por su parte, la Regla 40 del Tribunal de Apelaciones, *supra,* nos faculta para revisar una determinación interlocutoria. Aunque la lista que presenta la precitada regla no es taxativa, impone ciertas delimitaciones. Entre ellas figuran la corrección de la decisión recurrida y la etapa de los procesos.

En el caso de marras, el foro primario ordenó al peticionario la entrega de información relacionada a su gestión profesional en la prestación de servicios legales para el recurrido en el caso PO2019RF00035. El licenciado González Vélez se amparó en la existencia de un contrato que las partes suscribieron el 17 de julio de 2019.[40] Sobre los honorarios de abogado, en el contrato se redactó lo siguiente:

[…]

Segunda:   El cliente reconoce y acepta que los honorarios de abogado de los licenciados son **$150.00** por hora. Sin embargo, hay varios (sic) manera (sic) de pactar por los servicios profesionales que brinda nuestra oficina. Entre estas formas se puede pactar un precio fijo por el caso en su totalidad; se puede facturar por hora trabajada o fragmento de hora no menor de 15 minutos y por permitirlo la ley se pueden establecer honorarios de tipo contencioso, es decir cobrar un 33% del beneficio económico que se obtenga; o se pueden pactar los honorarios de una forma mixta es decir una mezcla de las expresadas maneras de

---

[40] Véase, expediente digital del caso YU2020CV00086, Entrada 95, Anejo "CONTRATO ORIGINAL", SUMAC TPI. *Moción en cumplimiento de orden y en réplica a otra,* presentada por el peticionario el 22 de mayo de 2024.

pagos para calcular y pagar los honorarios. (Énfasis en el original).

[…]

Décima:    En este caso para el pago de honorarios se establece una fórmula mixta. Se pacta como depósito para la retención de los servicios la suma de **$15,000.00.** Depósito que no es reembolsable. El **CLIENTE** pagó al **ABOGADO** la suma de **Diez Mil dólares ($10,000.00)** a la firma de este contrato. El balance restante de **$5,000.00**, serán pagados en o antes del **1 de agosto de 2019**. Esta suma no incluye los gastos de la tramitación del caso. (Énfasis en el original).

De lograrse alguna compensación en daños y perjuicios u obtener algún beneficio económico cuantificable el **CLIENTE** pagará al **ABOGADO** por concepto de honorarios de abogado en dicho caso la suma del **treinta y tres (33%)** por ciento sobre cualquier suma que se obtenga o en la cual se beneficie como resultado de la tramitación de dicha acción ya sea judicial o extrajudicialmente. Esta compensación no incluye los gastos de la tramitación del presente caso **(No incluye Gastos)**. (Énfasis en el original).

[…]

De conformidad al expediente ante nuestra consideración, una cantidad de $15,000.00 fue satisfecha por el recurrido.[41] Ahora, el foro *a quo* ordenó al peticionario información sobre sus gestiones profesionales, pues, según obra en el expediente, el 23 de diciembre de 2019, el peticionario presentó al recurrido una factura final por la cantidad de $15,000.00. Entre otras cosas, en la factura se explicó lo siguiente:

[…]

El beneficio total global asciende a $89,600.00 por concepto de pensión alimentaria básica que hubiera tenido que pagar a favor de ambos menores. Esto no incluye aumentos de pensión alimentaria, ni pensión suplementaria, tampoco se toma en consideración si el

---

[41] Véase, Entrada 14, del expediente digital del caso YU2020CV00086, SUMAC TPI.

menor continúa estudios universitarios, luego de su mayoría de edad.[42]

[...]

Con esta orden de prueba adicional dictada al peticionario y la determinación de un juicio plenario, el foro primario no excedió su autoridad para analizar el acuerdo suscrito entre las partes y la emisión de una factura final, a la luz de la prestación de servicios legales.

Por consiguiente, el peticionario no ha logrado persuadirnos de que el foro primario ha incurrido en abuso de discreción al emitir el dictamen recurrido. Tampoco se configuran los criterios de la Regla 40 del Tribunal de Apelaciones, *supra*, ni alguna de las excepciones contenidas en la Regla 52.1 de Procedimiento Civil, *supra*, que justifiquen nuestra intervención en este momento del proceso.

## IV

Por los fundamentos expuestos, denegamos el auto de *certiorari* incoado.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[42] Véase, expediente digital del caso YU2020CV00086, Entrada 16, Anejo "factura final del demandado su copia", SUMAC TPI. *Réplica a reconvención*, presentada por el peticionario el 30 de julio de 2021.